UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN J. SAWAYA #253139,

        Plaintiff,                                              Hon. Robert J. Jonker

v.                                                          Case No. 1:20-cv-220

ADDIE BRISKE, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Motion of Defendant, Robert Crompton, M.D., for Summary Judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 16.) Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendant's motion be **GRANTED**.

**BACKGROUND**

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), has sued several MDOC medical providers, including Defendant Robert Crompton, M.D., regarding events that occurred in 2018 and 2019 at Oaks Correctional Facility (ECF), where Plaintiff is presently incarcerated. On December 16, 2018, Plaintiff was taken to Munson Hospital in Manistee, Michigan for acute and excruciating pains in his chest. (ECF No. 1 at PageID.12.) Plaintiff's condition was too critical for treatment in Manistee, so he was taken by ambulance to Munson Hospital in Traverse City, Michigan. At that hospital, it was determined that Plaintiff was suffering from septic shock—his organs were shutting down. Plaintiff was treated at Munson in Traverse City for three weeks and then transferred to Dwayne Waters Hospital in Jackson Michigan, where he was treated for several weeks. (*Id.*)

1

Plaintiff was transferred back to ECF in March of 2019. Defendant Crompton provided Plaintiff continuing care. Dr. Crompton promptly rescinded the pain medications Plaintiff had been prescribed at Dwayne Waters Hospital, switching Plaintiff to Motrin and Tylenol instead. Plaintiff contends that Dr. Crompton maliciously denied Plaintiff appropriate treatment for pain. Plaintiff also contends that the pain medication that Dr. Crompton prescribed was inappropriate because of Plaintiff's liver problems. (*Id.* at 12–13.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so

2

powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration."

3

Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V. The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of his motion, Defendant Crompton attaches a Step III Grievance Report showing grievances that Plaintiff exhausted through Step III during the relevant time period. (ECF No. 16-2.) Defendant Crompton notes that Plaintiff pursued four grievances through Step III pertaining to the inaccurate diagnosis leading up to his December 2018 hospitalization and the post-hospitalization treatment of his pain in 2019. He argues that none of these grievances was properly exhausted. In his response, Plaintiff argues that he properly exhausted his claims against Defendant Crompton or that his administrative remedies were unavailable. Plaintiff further argues that his claim against Defendant Crompton should not be dismissed because he has established a claim for deliberate indifference against Defendant Crompton under clearly established law. (ECF No. 17 at PageID.158–59.)

4

**I.      Grievance ECF-19-05-1205-28E (1205 Grievance)**

Plaintiff filed the 1205 Grievance on May 27, 2019, citing an incident date of December 9, 2018, and naming "Health Care" and "Health Care Workers." The grievance dealt with the employees' negligence in failing to make an accurate diagnosis, which resulted in Plaintiff being rushed by ambulance to the hospital in Traverse City. (ECF No. 16-2 at PageID.130.) The grievance was rejected as untimely. Plaintiff filed a Step II appeal, which upheld the Step I rejection because Plaintiff had several months following his return from the hospital in which to file his grievance. (*Id.* at PageID.128–29.) The rejection was upheld at Step III. (*Id.* at PageID.127.)

Contrary to Plaintiff's argument, the 1205 Grievance was not properly exhausted. As the Sixth Circuit has observed, "[t]he PLRA's exhaustion requirement, contained in 42 U.S.C. § 1997e(a), requires 'proper' exhaustion, which includes compliance with a state agency's timeliness deadlines." *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011) (citing *Woodford*, 548 U.S. at 90–91); *see also Beck v. Ford*, No. 1:08-cv-1001, 2010 WL 889935, at *4 (W.D. Mich. Mar. 10, 2010) (concluding that the plaintiff failed to properly exhaust his grievance where his Step II and III appeals were rejected as untimely). Because the 1205 Grievance was rejected as untimely at all levels, it cannot properly exhaust Plaintiff's claim.

**II.     Grievance ECF-19-05-1287-28A (1287 Grievance)**

Plaintiff filed the 1287 Grievance on June 15, 2019. The 1205 Grievance cited an incident date of December 1, 2018, and complained about the medical treatment Plaintiff received leading up to his December 2018 hospitalization. The 1298 Grievance was rejected as duplicative of the 1205 Grievance at Step I. (*Id.* at PageID.126.) Plaintiff appealed the rejection, but the rejection was upheld at both Steps II and III. (*Id.* at PageID.123–25.) Pursuant to MDOC Policy Directive 03.02.130 ¶ J.2, a grievance "shall be rejected by the Grievance Coordinator if . . . [i]t raises issues that are duplicative of those raised in another grievance filed by the grievant." Where a plaintiff's

5

grievance is properly rejected as containing issues that duplicate those in another grievance, the grievance will not be considered properly exhausted. *See Lenoire v. Millette*, No. 2:16-cv-69, 2016 WL 7334840, at *1 (W.D. Mich. Dec. 19, 2016).

Plaintiff argues that he properly exhausted the 1287 Grievance because the issues therein were not duplicative of those set forth in the 1205 Grievance, apparently because he actually named the individual health care workers in the 1287 Grievance, while he did not do so in the 1205 Grievance. Even so, the issues in the 1287 Grievance are the same issues asserted in the 1205 Grievance. Both grievances concerned the treatment (or lack thereof) Plaintiff received leading up to his 2018 hospitalization. The 1287 Grievance was properly rejected.

### III.   Grievance ECF-2019-06-1303-12F/28E (1303 Grievance)

Plaintiff filed the 1303 Grievance on June 20, 2019, citing an incident date of June 19, 2019. (*Id.* at PageID.135.) Plaintiff complained that Defendant Crompton and other health care staff were failing to address the pain he was having following his December 2018 surgery. The grievance was denied at Step I. (*Id.* at PageID.136.) Plaintiff's Step II appeal was also denied. (*Id.* at PageID.133–34.) Plaintiff's Step III appeal, however, was rejected as untimely. The due date for the appeal was August 28, 2019, but even applying a grace period for standard mail, the grievance was not received until September 16, 2019. (*Id.* at PageID.132.)

Plaintiff argues that the Step III appeal was unavailable to him due to an injury, but he provides no affidavit, declaration, or other evidence supporting that claim. *See Jennings v. Karnitz*, No. 1:12-cv-175, 2013 WL 791433, at *4 (W.D. Mich. Feb. 4, 2013), *report and recommendation adopted*, 2013 WL 791233 (W.D. Mich. Mar. 4, 2013) (concluding that the plaintiff's failure to submit an affidavit or other evidence to support his claim that he was refused forms to appeal existing grievances because he was on modified access mandated summary judgment for the defendants in light of their properly-supported motion for summary judgment). Moreover, as

6

Defendant notes, one week earlier, Plaintiff filed his Step III appeal for another grievance, indicating that he was fully capable of filing a timely appeal. Therefore, the 1303 Grievance also does not properly exhaust Plaintiff's claim.

### IV.     Grievance ECF-2-19-06-1345-12D/28E (1345 Grievance)

Plaintiff filed the 1345 Grievance on June 26, 2019, citing an incident date of June 26, 2019. In this grievance, Plaintiff complained that Defendant Crompton would not refer him to pain management but instead told him to stretch and he would be fine. (*Id.* at PageID.1345.) The grievance was denied at Step I. Plaintiff filed a Step II appeal, which was also denied. (*Id.* at PageID.119–20.) Plaintiff's Step III appeal was rejected. (*Id.* at PageID.118.)

The Step III response does not indicate why the appeal was rejected, but the Step III grievance report indicates that the appeal was untimely. The Step II response was issued on August 13, 2019. (*Id.* at PageID.120.) Therefore, Plaintiff had ten business days after receiving the Step II response to file his Step III appeal. Mich. Dep't of Corrs. Policy Directive 03.02.130 ¶ HH. Grievance appeals are deemed filed on the date the MDOC receives them. *Id.* ¶ T. Even if Plaintiff did not receive the Step II response until several days after it was issued, the Step III appeal would have been due in early September 2019. However, the Step III appeal was not received until September 26, 2019, making it untimely. (*Id.* at PageID.117.)Therefore, the 1345 Grievance does not properly exhaust Plaintiff's claim against Defendant Crompton. *See Lewis v. Spitters*, No. 1:14-cv-917, 2015 WL 5682405, at *5 (W.D. Mich. Sept. 18, 2015) (grievances rejected at Step III failed to exhaust the plaintiff's claims).

## CONCLUSION

For the foregoing reasons, I recommend that Defendant Crompton's Motion for Summary Judgment based on Plaintiff's failure to exhaust his administrative remedies (ECF No. 16) be **granted** and that Plaintiff's claims against Defendant Crompton be **dismissed without prejudice**.

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: September 8, 2020                                         /s/ Sally J. Berens
                                                                 SALLY J. BERENS
                                                                 U.S. Magistrate Judge